# Henry Mackay, Administrator,
## v.
# Gabrilla Pulford.

*Administration—Claim of Administratrix—Sec. 72, Chap. 3. Starr & C.*
*Ill. Stats—Limitations—Subsequent Promise—Partnership.*

1.  A partnership debt is joint and several, and a creditor may either proceed against assets in the hands of a surviving partner, or against the estate of a deceased partner, and a failure to pursue partnership assets can not be relied upon as a defense, when suit is brought against the estate.

2.  Upon a claim filed by a widow and administratrix against the estate of her deceased husband, to recover money paid out by her in his lifetime, in behalf of a partnership of which he was a member, this court declines to interfere with the verdict in her behalf.

[Opinion filed May 25, 1889.]

Appeal from the Circuit Court of Carroll County; the Hon. James H. Cartwright, Judge, presiding.

Mr. J. M. Hunter, for appellant.

Messrs. James Shaw and George L. Hoffman, for appellee.

Upton, J. The appellee is administratrix of her deceased husband, Charles Pulford.

On the 14th day of April, A. D. 1888, she filed a claim against her husband's estate in the County Court of Carroll County, and the appellant was appointed by the court to appear and defend for the estate as special administrator, pursuant to the provisions of Sec. 72, of Chap. 3, Starr & C. Ill. Stats. Thereafter proceedings were had in the County Court upon said claim, which resulted in an appeal to the Circuit Court of said Carroll County. A trial was had in that court with a jury, which resulted in a verdict of $650 for the appellee, and judgment was rendered upon that verdict. From that judgment an appeal was taken to this court on behalf of the estate by its temporary administrator.

It appears from the record before us, that some years prior to his death, the deceased had been engaged in carrying on a meat market in Larana, in Carroll county, in partnership with one Charles Benedict, his step-son, under the firm name of Pulford & Benedict. This firm became financially embarrassed, to relieve which, and to obtain means to purchase stock to carry on said business, they borrowed money upon two different occasions, at one time from Anna Rourke, at another from Flora Eaton, giving to the former a note for $335, due in one month, and to the latter a note for $230, due one day after date, and dated respectively on the 23d day of December, A. D. 1880, and the 15th day of October, A. D. 1881. Upon the trial in the Circuit Court it was claimed that the appellee in fact signed both of above mentioned notes as surety for the firm of Pulford & Benedict, and that she paid both of said notes, principal and interest, in installments at different times as she could obtain the money. It is not claimed that appellee was a member of that firm, or had any interest in its business affairs, further than to aid her husband and son in their business venture.

The appellee was, at the time of the execution of these notes and obtaining the money thereon and long afterward, engaged in the millinery business in her own name in Larana in said Carroll county. As to the $335 note, Anna Rourke, the payee thereof, testified that Pulford & Benedict got the money, that appellee signed the note in her own house before she would let the money go, and that she would not give the money to Pulford & Benedict, until appellee had signed the note, and that it was borrowed for Pulford & Benedict; that the note was paid in installments to her by appellee in full. The last installment was paid some two or three years prior to the June term of the Circuit Court of Carroll County for the year 1888.

As to the other note for $230, Mrs. Eaton, the holder thereof, testified that the note was given by the firm of Pulford & Benedict, and was paid by appellee, the last payment having been made by her in August or September, A. D. 1883. Charles Benedict testified that the money for which

both notes were given, was obtained for the firm of Pulford
& Benedict, of which he was a member, and that the money
was put into the business of that firm, and was never paid
back to the appellee. He further testified, that to the best of
his recollection, appellee also signed the note due Mrs. Eaton;
that these two notes to Mrs. Rourke and Mrs. Eaton were the
only notes against the firm, and the only notes ever given by
the firm to those parties. That some two years after the
dissolution of said firm, he paid $50 to apply on the Eaton
note from the assets of the firm.

It was claimed by appellant in the Circuit Court, and the
claim is renewed in this court, that no recovery should be
had in this case upon two grounds: first, because no valid
claim was shown to have existed against Charles Pulford at
the time of his death, for the money paid by appellee upon
these notes; that at most it was a voluntary payment, and
wholly unauthorized by him; and second, that the statute of
limitations of five years barred any recovery in case a valid
claim against deceased, Pulford, ever did exist.

It is the settled law in this State, at least, that a partnership
debt is joint and several, and a creditor has the right to elect
whether he will proceed against the assets in the hands of the
surviving partner, or against the estate of the deceased part-
ner. Nor will the *laches* of the creditor in following the
assets of the firm preclude a recovery. The creditor has the
right to proceed against the estate of such deceased partner,
at any time before the statute of limitations has run, and
a failure to pursue the partnership assets, if any there
should be, can not be relied upon as a defense when suit is
brought against the estate. Mason v. Tiffany, 45 Ill. 392;
Silverman v. Chase, Ex'r, 90 Ill. 37.

It was insisted by appellee in the Circuit Court on the trial
of this cause, that the payments upon the notes of the part-
nership to Mrs. Rourke and Mrs. Eaton by appellee, would
take the entire amount called for by these notes out of the
statute, and if it did not have that effect, a new promise was
relied upon to remove the bar of the statute. It appears
from this record that this co-partnership of Pulford & Bene-
dict was dissolved in February, 1881. Between that period

and the death of Charles Pulford, which occurred in October, 1887, appellee had endeavored to obtain payment in whole or in part of the money so paid by her on these two notes from the said Charles Pulford. They were then living in the same house as husband and wife, his health declining. Appellee, being engaged in business, employed a domestic, one Mary Chapman, for a period of about six months, to do the housework and aid in caring for Charles Pulford in his sickness, for which appellee personally paid $3.50 per week. Mary Chapman testified that while so employed in January, 1887, she heard appellee and Charles Pulford, her husband, talking about the Anna Rourke and Mrs. Eaton notes, and in regard to the payment thereof; that Mr. Pulford was in the bed in the sitting-room. Appellee asked Mr. Pulford "what she would do about those notes." He replied, "Don't you worry, I will pay you for those notes." Appellee replied, "Supposing you would die, what will I do then?" Mr. Pulford said, "Well, you can get it out of the estate." It is unnecessary for us to pursue the evidence in this case to any greater extent, nor are we called upon to determine the legal effects of payments made upon these notes by appellee. The jury was fully instructed as to the law applicable to the case, and no complaint is made in regard thereto.

The questions involved were in the main questions of fact and for the jury to determine, and we think the jury were fully justified by the evidence in the verdict rendered, and the Circuit Court did not err in rendering judgment thereon. Finding no error in this record, the judgment of the Circuit Court is affirmed.                    *Judgment affirmed.*